## EDMUND B. BOWMAN, *Adm'r vs.* LOUIS HOUDLETTE, *Adm'r & Trustee.*

A mortgage of land was made to secure a debt of less amount than the value of the land ; the mortgagor became insolvent, and so continued for many years, but the creditors did not take the equity to satisfy their debts ; just before the foreclosure of the mortgage, the estate was conveyed to certain persons who had given their security to raise the money to pay the mortgagee ; a son of the mortgagor paid the money thus raised, and took a conveyance from the grantees of the mortgagee for his indemnity ; the son conveyed the estate to his mother, the wife of the mortgagor, and took from them a bond to pay the amount by him paid ; the father assigned to the son a debt due from a third person to be appropriated in part payment of the sum due to him ; a suit was brought against the father by a creditor, and the person from whom the debt assigned was due, was summoned as trustee ; and on trial the jury negatived any fraudulent intention : —

*It was held*, that the transaction was not *in law* a fraud upon creditors.

THE action was upon a note dated *May* 3, 1823, given by the defendant's intestate, *Samuel Bishop*, to *Margaret Bridge*, on whose estate the plaintiff is administrator. Both *Mrs. Bridge* and *Bishop* were alive, at the commencement of the suit, and one *Chism* was summoned as the trustee of *Bishop*. *Chism* admitted that a sum was due from him to *Bishop* on account, and disclosed,

that he had been notified of an assignment thereof from *Samuel Bishop*, to *Charles C. Bishop*. The validity of this assignment was denied by the plaintiff, and *C. C. Bishop* was summoned in, and an issue was framed to try whether the assignment was, or was not fraudulent, and the questions arose on this trial, the original defendant having been defaulted.

At the trial before EMERY J. the counsel for the plaintiff, requested the Judge to instruct the jury, that the consideration expressed in said assignment, being the money paid said *Dole*, the assignee of the mortgagee, that if they should find the said *Charles* had been already paid the said sum by a conveyance of said land, that in that case, said assignment was in law fraudulent as to creditors. The Judge gave the instruction as requested. No other request was made, and no other instruction was given. The report states, that "the whole evidence, which was in some measure conflicting, was submitted to the jury." The facts sufficiently appear in the opinion of the Court. Neither the report of the case, nor any paper referred to, shows which way the verdict was, or how the issue was framed.

*F. Allen*, for the defendant.

*Ruggles* and *J. S. Abbott*, for the plaintiff.

The opinion of the Court was by

WESTON C. J. — It appears that the defendant's intestate, who had been insolvent for many years, mortgaged an estate, worth over five hundred dollars to one *Hathorne* as security for a debt of somewhat more than two hundred. The equity was liable to be taken by the creditors of the intestate ; but their indulgence was such, that they never interfered to make it available for their benefit. Just before the foreclosure of the mortgage the estate was conveyed to certain persons, who had given their security to raise the money to pay *Hathorne*. This arrangement may have been made for the benefit of the intestate, but it must be presumed with the acquiescence of his creditors, who might have taken the property. *Charles Bishop*, the son, having paid the debt, for which the grantees of *Hathorne* stood responsible, took a conveyance of the estate for his indemnity. The substitution of *Charles* placed the creditors in no

worse situation ; and if they chose to be passive, there is no just reason to impute fraud to him in this part of the transaction.

He thus became the owner of the estate, with liberty to dispose of it at pleasure. He conveyed it to his mother, the wife of the intestate, thus putting within the reach of his creditors, the life estate, which had enured to him, in virtue of that conveyance. The son had a right to stipulate, that the money he had paid should be refunded to him. He would otherwise be a loser of all he had paid. As a partial reimbursement, the debt in controversy was assigned to him. The consideration for the assignment, as recited, refers to the original advancement by the son, although in truth it was for the conveyance of the land which he had received in payment. The jury have negatived fraud ; and upon the evidence reported, we perceive no sufficient reason to disturb the verdict.